UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BARBARA A. ZIOBROWSKI        :
           :
        v.              :     C.A. No. 14-549M
           :
CAROLYN W. COLVIN        :
Commissioner of the Social Security    :
Administration           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on December 23, 2014 seeking to reverse the decision of the Commissioner.  On June 23, 2015, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security.  (Document No. 11).  On July 20, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 12).  A Reply Brief was filed on August 5, 2015.  (Document No. 13).

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 11) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB on January 17, 2012 (Tr. 188-192) and SSI on May 31, 2012 (Tr. 193-202) alleging disability since April 19, 2011. (Tr. 193). The applications were denied initially on May 11, 2012 (Tr. 81-90) and on reconsideration on September 9, 2012 (Tr. 93-105). On November 15, 2012 Plaintiff requested an Administrative hearing. (Tr. 147). On July 1, 2013, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 42-75). The ALJ issued an unfavorable decision to Plaintiff on August 2, 2013. (Tr. 20-35). The Appeals Council denied Plaintiff's Request for Review on October 29, 2014, therefore the ALJ's decision became final. (Tr. 1-6). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erroneously rejected the opinion of her treating counselor regarding the limitations arising out of her mental impairments and failed to properly evaluate her 2012 participation in the partial hospitalization program at Butler Hospital. She also argues that the ALJ's adverse credibility determination, including the conclusion the ALJ drew from her receipt of unemployment benefits, is not supported by the record.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's evaluation of the medical evidence and his adverse credibility determination are supported by substantial evidence and entitled to deference.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).   In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R.  §  404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.      APPLICATION AND ANALYSIS

Plaintiff was fifty-two years old on the date of the ALJ's decision.  Plaintiff has a ninth grade education and worked in the past as a cashier, security worker and certified nursing assistant.  (Tr. 33).  Plaintiff  alleged disability due to post-traumatic stress disorder, fibromyalgia, depression, panic disorder, anxiety and bipolar disorder.  (Tr. 44).

-11-

Records from the Kent Center from July 2011 through January 2012 generally show that, despite reports of increased stress due to issues such as dealing with her girlfriend's cancer, damage to her house by a tree, conflict with her girlfriend and dealing with a hurricane, (Tr. 806, 810, 812, 815-819), Plaintiff was cooperative, had appropriate speech, no problems with perception, no suicidal or homicidal ideation, and no sleep disturbance or change in activity level. (Tr. 804-842). Medication was noted to be working. (Tr. 810). Notes indicate the absence of obsessions or compulsions, delusion or prosecutory thoughts. (Tr. 833). Plaintiff was also noted to be bright, articulate and motivated. (Tr. 842).

Notes from Angell Street Psychiatry for the period of September 2011 through January 2012, which include Dr. Raza's treatment notes, generally show that Plaintiff was cooperative, alert, fully oriented, that she had normal motor activity, a full affect, normal speech, normal thought process and content, normal perception, normal memory, normal attention and concentration and good insight and judgment. (Tr. 846-852).

Kent Center notes from January 2012 through March 2012 generally show that, although Plaintiff was stressed due to a family situation, she was cooperative, had appropriate speech, normal thought and perception and no suicidal or homicidal ideation. (Tr. 854-865, 890, 892-893, 897). She also generally reported no sleep disturbance or change in activity level. (Tr. 854-865, 892-893, 899). Notes from the Kent Center in April 2012 show the Plaintiff was dealing with black mold and a problem with insulation in her house, and that she had broken up with her girlfriend. (Tr. 881). At that time, she reported suicidal ideation, but with no plan. (Tr. 882). She was fearful that her girlfriend would become violent. (Tr. 883). Her girlfriend's ex-husband told Plaintiff that the girlfriend becomes violent after breakups; the girlfriend had been physically threatening to Plaintiff.

-12-

(Tr. 883-885).  The records otherwise show generally that Plaintiff had appropriate speech, no problems with thought or perception, no suicidal or homicidal ideation and no sleep disturbance or change in activity level.  (Tr. 885-886).

Notes from Ms. Woodburn at Angell Street from April 2012, generally reflect that Plaintiff was cooperative, alert, fully oriented, had a full affect, normal speech, normal thought process and content, normal perception, normal memory, normal attention and concentration and good insight and judgment.  (Tr. 910-914).  Plaintiff's intellectual functioning was also intact.  (Tr. 913).  The initial intake form completed by Ms. Woodburn indicates that Plaintiff and her partner were pursuing couple's therapy to deal with stressors affecting their relationship.  (Tr. 911).  Ms. Woodburn assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 61, reflecting only mild symptoms.  (Tr. 914).

Plaintiff continued with couple's therapy with Ms. Woodburn through June 2012.  (Tr. 1012-1027).  Notes from that period do show an initial increase in paranoid thoughts regarding Plaintiff's food being poisoned by her partner.  (Tr. 1021).  Generally, though, Ms. Woodburn's notes show that Plaintiff was nonetheless cooperative, alert, fully oriented, had normal motor activity, a full affect, normal speech, normal thought process, normal memory, attention, and concentration and good insight and judgment.  (Tr. 1013, 1017, 1021, 1027).  Later notes show that Plaintiff and her partner were getting along better, as well as a decrease in paranoid ideation.  (Tr. 1013, 1017).

Notes from Ms. Levin, LICSW, from May 2012 show that Plaintiff reported problems with memory and concentration.  (Tr. 1025).  Plaintiff was pleasant, cooperative and fully oriented, however.  (Tr. 1024).  Notes from Ms. Levin through June 2012 indicate that Plaintiff reported

paranoia and hypervigilance, as well as difficulty focusing.  (Tr. 1018).  She was having issues with her stepdaughter and was anxious all the time.  (Tr. 1020).  Ms. Levin's notes reflect that Plaintiff was to begin a partial hospitalization program at Butler Hospital based on a referral by Dr. Raza. (Tr. 1018).

An initial evaluation form from Butler Hospital dated June 18, 2012, designated as "Episode 1," states that Plaintiff had been referred for increased depression and anxiety with a marked decline in functioning.  (Tr. 1053).  Stressors included her partner's poor health and her stepdaughter.  Id. Plaintiff reported that she screwed her windows shut and checked them constantly.  Id.  She cleaned continually and had stressors related to her partner's health and her stepdaughter having moved in six months prior.  Id.  The next note from Butler is a discharge summary dated June 28, 2012.  (Tr. 1056).  The discharge summary also lists the admission date as June 28, 2012 and is designated "Episode 2."  Id.  The discharge summary states that Plaintiff had two appointments and a surgery coming up, which would take her out of the program.  Id.  There was the potential to come back and do the program when she had the ability to do five days in a row.  Id.  Plaintiff said she would call when she was ready to return to the program.  (Tr. 1056, 1058).  Her memory, attention and concentration were noted to be "subjectively" limited.  (Tr. 1058).

Plaintiff did not resume treatment until June 2013 with Ms. Woodburn.  (Tr. 1051).  Plaintiff testified that she did not resume treatment until then due to a lack of resources.  (Tr. 51-52, 56-58). At that time, Plaintiff reported paranoid thoughts, including that her food may be poisoned.  Id. Plaintiff stated that things had gotten worse and that anxiety was preventing her from leaving her home.  Id.  Ms. Woodburn noted problems with thought content, as well as with memory, attention

-14-

and concentration.  Id.  Nonetheless, Plaintiff was pleasant, cooperative, alert, fully oriented, had

a full affect, normal speech, normal thought process and fair insight and judgment.  Id.

### A.       The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Steps 2 and 3, the ALJ found

that Plaintiff's depression, anxiety, PTSD and personality disorder were severe impairments within

the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c), but did not meet or medically equal any

of the Listings.  (Tr. 26-27).  As to RFC, the ALJ found that Plaintiff was able to perform a full

range of work at all exertional levels but limited to simple, repetitive work with limited social

interaction.  (Tr. 27-28).  At Step 4, the ALJ found that Plaintiff could not perform any of her past

relevant work.  (Tr. 33).  However, at Step 5, the ALJ concluded that Plaintiff could perform certain

unskilled occupations and thus was not disabled within the meaning of the Social Security Act.  (Tr.

34).

### B.       The ALJ's credibility determination is not supported by substantial evidence.

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting

effects of her symptoms are "not entirely credible for the reasons explained in [his] decision."  (Tr.

29).  In support of that finding, the ALJ noted, in part, as follows:

> The claimant worked during the fourth quarter of 2012, and though
> she did not perform substantial gainful activity, it indicates that she
> was capable of performing some work and her symptoms are not as
> severe as alleged (Exhibit 6D).
>
> The claimant received unemployment benefits from the third quarter
> of 2011 through the first quarter of 2012 (Exhibit 6D).  This shows
> that the claimant was ready, willing and able to work during this
> period and raises questions about her credibility.

(Tr. 32).

It is apparent from the ALJ's decision and his statements at the hearing that these issues were material to the ALJ's determination that Plaintiff's allegations about her symptoms and limitations were not entirely credible.  At the hearing, the ALJ accurately noted that Plaintiff received unemployment benefits in late 2011/early 2012 and asked her "didn't you have to represent that you were ready, willing and able to work to get the money." (Tr. 50).  Plaintiff responded "I, I guess. I don't – I just did what the lawyers told me to do." Id.  Plaintiff testified that she was "fired" from her last job as a CNA "because I couldn't, I couldn't work.  I wasn't working well, I couldn't – there was days I couldn't show up, I left work early because I had anxiety." (Tr. 57).  The ALJ then asked Plaintiff how she collected unemployment if she was fired and her response was "I don't know." Id.  The ALJ then stated that "[i]t doesn't make any sense to me" and offered that "[n]ormally if you're fired that's for cause and they don't have to pay you unemployment." (Tr. 58).  He also added "[p]articularly if they think you're disabled." Id.  The ALJ ended by saying "I'm just trying to make sense of this." Id.  Ultimately, in his decision, the ALJ concluded that Plaintiff's receipt of unemployment benefits "shows that [she] was ready, willing and able to work" and called her credibility into question. (Tr. 32).  However, the record is simply not sufficiently developed in this case to support the ALJ's conclusion and adverse credibility determination.

The ALJ concluded that Plaintiff's receipt of unemployment benefits "shows that [she] was ready, willing and able to work" and thus undercut her credibility. (Tr. 32).  It is also apparent from the record and the ALJ's decision that his adverse credibility determination played a material part in his RFC assessment and non-disability finding.  Here, the record is not sufficiently developed to support the ALJ's conclusions in this regard.

-16-

In <u>Perez v. Sec'y of H.E.W.</u>, 612 F.2d 1, 3 (1st Cir. 1980), the First Circuit Court of Appeals expressed "reservations about the significance of such evidence" but refused to overturn a denial of benefits because the receipt of unemployment benefits was not a "decisive factor" in the ALJ's decision.  It did not, however, hold that such evidence "may never be considered on the issue of disability." <u>Id.</u> at 3.  <u>See also</u> <u>Gerrettie v. Barnhart</u>, No. 02-C-408-C, 2003 WL 23109391 at *11 (W.D. Wis. Feb. 13, 2003) (holding that claimant's assertion in connection with claim for unemployment benefits that she was able to work did not constitute sufficient evidence to support ALJ's conclusion that claimant's subjective complaints, including her need to change between sitting and standing as needed, were not credible).

In this case, it is apparent from the record that Plaintiff's receipt of unemployment benefits weighed heavily in the ALJ's adverse credibility determination as to Plaintiff's testimony.  (Tr. 32, 50, 57-58).  Plaintiff testified that she was fired from her last job as a CNA because she "couldn't work," "wasn't working well" and "there was days I couldn't show up, I left work early because I had anxiety."  (Tr. 57).  Under R.I. Gen. Laws § 28-44-18, a discharge under such circumstances is disqualifying for unemployment benefit purpose only if it constitutes "proved misconduct connected with...work."[1]  "Misconduct" is defined as "deliberate conduct in willful disregard of the employer's interest, or a knowing violation of a reasonable and uniformly enforced rule or policy of the employer." <u>Id.</u>  Typically, absenteeism or other work performance difficulties related to legitimate medical issues would not constitute disqualifying "misconduct," and that is apparently

---

[1] At the hearing, the ALJ stated that "normally if you're fired that's for cause and they don't have to pay you unemployment," and "[p]articularly if they think you're disabled."  (Tr. 58).  However, under Rhode Island law, a claimant who is fired will receive unemployment benefits unless the discharge was for "proved misconduct connected with his or her work."  R.I. Gen. Laws § 28-44-18.  Thus, the record reflects a fundamental misunderstanding of the applicable law by the ALJ.

what the Department of Labor and Training concluded in Plaintiff's case.  In addition to clearing

the "misconduct" hurdle, Plaintiff would also have to establish that she was "physically able to work

and available for work."  R.I. Gen. Laws § 28-44-12(a).  A claimant is required to "search for

suitable work."  Id.

There is nothing explicit in the record showing that Plaintiff made any statements in the

context of her unemployment claim that contradict any statements made in the course of this case.

Plaintiff testified that she was fired because she couldn't do the job and had attendance issues

"because I had anxiety."  (Tr. 57).

Thus, it is not surprising that she received unemployment benefits since there is no indication

in the record that she was fired for some "misconduct."  Also, there is no indication in the record

that Plaintiff understood what constituted "suitable work" for purposes of R.I. Gen. Laws § 28-44-

12(a)(3) or that Plaintiff made any representations in connection with her 2011 claim for

unemployment benefits, express or implied, which contradict any statements she has made in this

case about her symptoms or limitations.  There is simply no basis in the record to support the

conclusions reached by the ALJ regarding Plaintiff's receipt of unemployment benefits.

The ALJ also found as to credibility that Plaintiff's activities of daily living "belie the

severity of the symptoms alleged."  (Tr. 32).  The ALJ based his finding on the following:

> For example, the claimant testified that she swept floors, cleaned the
> bathroom, and used a computer.  She reported in February 2012 that
> she cared for cats, had no problems in caring for herself, vacuumed,
> did dishes, dusted, and shopped by computer for clothes (Exhibit
> 11E).  The claimant stated that she was able to handle her finances,
> watched television, and played computer games online twice a week
> (Exhibit 11E).

Id.  However, the ALJ failed to consider that Plaintiff was able to perform these activities at home. In Exhibit 11E (Tr. 287-288), Plaintiff reported these activities with the statements that "I have no problem inside house its outside I will not do" and "I don't go outside because I am afraid of who is going to get me."  Plaintiff alleges disability due to PTSD, panic disorder and anxiety.  (Tr. 44).  Her treating therapist indicated that Plaintiff "often cannot leave her home due to anxiety and inability to calm down," and "continues to present with paranoid ideation." (Tr. 1031).  The fact that Plaintiff can perform some chores and other tasks inside her home does not undercut her claim that she is unable to work outside the home due to her anxiety, paranoia and other mental health conditions. Thus, the ALJ's consideration of these issues in finding Plaintiff to be "not entirely credible" is not supported by substantial evidence.[2]

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 11) be GRANTED.  Further, I recommend that Final Judgment enter in favor of Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional administrative proceedings consistent with this decision.

---

[2] Since I find that this issue warrants remand, there is no need to fully address Plaintiff's other claims of error. However, I offer two observations for the benefit of full and fair consideration on remand.  First, the ALJ rejected treating therapist Woodburn's 2013 disability opinion, in part, because it "lacks a description of discrete functional limitations arising out of [Plaintiff's] mental impairments." (Tr. 32).  The ALJ's description is not completely accurate since the opinion does contain details about Plaintiff's symptoms and limitations and is accompanied by notes from a therapy session which took place on the same date the opinion was rendered. (Tr. 1031, 1051).  Second, the ALJ gave significant probative weight to the opinions of the state agency psychological consultants. (Tr. 33).  However, these consultants rendered their opinions without the benefit of Ms. Woodburn's 2013 opinion and supporting records or the 2012 Butler Hospital records.  Further review and evaluation of this medical evidence on remand is warranted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 31, 2015